[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10570
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 3, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:09-cr-00073-MEF-TFM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH BYRON WALDEN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 3, 2012)

Before TJOFLAT, EDMONDSON and MARCUS, Circuit Judges.

PER CURIAM:

Joseph Walden appeals his convictions for knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count 1), and knowingly possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2). On appeal, Walden argues that: (1) there was insufficient evidence to support his convictions; (2) the district court erred when it instructed the jurors that "everyone is presumed to know the law" and that "ignorance of the law is not a defense"; and (3) his rights under the Double Jeopardy Clause of the Fifth Amendment were violated when he was convicted for receiving and possessing child pornography. After careful review, we affirm.

We review de novo whether there is sufficient evidence in the record to support a jury's verdict in a criminal trial, viewing the evidence in the light most favorable to the government. United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). We review the legal correctness of a jury instruction de novo, but defer to the district court on questions of phrasing absent an abuse of discretion. United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000). We generally review a double jeopardy challenge de novo, but if the defendant did not raise a double jeopardy argument before the district court, we review for plain error. United States v. Smith, 532 F.3d 1125, 1126 (11th Cir. 2008). Plain error exists where there is (1) an "error"; (2) "that is plain"; (3) "that affects substantial rights"; and (4) "the error seriously affects the

2

fairness, integrity or public reputation of judicial proceedings." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (quotation and brackets omitted). An error is not "plain" if it is not "clear under current law," meaning that there is no case in our Circuit or the Supreme Court resolving the specific issue raised. United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) (quotation omitted).

First, we are unpersuaded by Walden's claim that the evidence was insufficient to support his conviction. Regardless of whether the evidence is direct or circumstantial, we are required to resolve any conflicts in the evidence in favor of the government and accept all reasonable inferences that tend to support the government's case. United States v. Williams, 390 F.3d 1319, 1324 (11th Cir. 2004). When the government's case is based on circumstantial evidence, reasonable inferences, not mere speculation, must support the jury's verdict. United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001). A criminal conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence. United States v. Frank, 599 F.3d 1221, 1233 (11th Cir.), cert. denied, 131 S. Ct 186 (2010).

Additionally, "[t]he credibility of a witness is in the province of the factfinder and [we] will not ordinarily review the factfinder's determination of credibility." United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). Indeed, we will accept

3

a factfinder's credibility determination "unless we are left with the definite and firm conviction that a mistake has been committed." United States v. Chirinos, 112 F.3d 1089, 1102 (11th Cir. 1997) (quotations omitted). It is the duty of the trier of fact to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," and we, as the reviewing court, will only inquire as to whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis omitted).

"[W]hen a defendant takes the stand in a criminal case and exposes his demeanor to the jury, the jury may make adverse determinations about his credibility and reject his explanation as a complete fabrication." United States v. Vazquez, 53 F.3d 1216, 1225 (11th Cir. 1995). If the jury does not believe the defendant's version of events, the statements made by the defendant may be considered by the jury as substantive evidence of the defendant's guilt, at least where some corroborative evidence exists for the charged offense. United States v. Brown, 53 F.3d 312, 314-15 (11th Cir. 1995). "This rule applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge. . . ." Id. Further, unless the text of a statute states

4

differently, the term "knowingly" only requires "proof of knowledge of the facts that constitute the offense." Bryan v. United States, 524 U.S. 184, 193 (1998).

Under 18 U.S.C. § 2252A(a)(2)(A), it is unlawful for any person knowingly to receive or distribute "any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."  "A person 'knowingly receives' child pornography . . . when he intentionally views, acquires, or accepts child pornography on a computer from an outside source." United States v. Pruitt, 638 F.3d 763, 766 (11th Cir.), cert. denied, 132 S.Ct. 113 (2011).  "Knowingly receiving" child pornography images includes intentionally viewing images sent to a defendant's computer, whether or not the viewer tries to save, edit, or otherwise exert more control over the images.  However, inadvertent receipt of child pornography does not violate the statute. Id. When a court addresses "knowing receipt," it is mainly an issue of fact, not law. Id. at 766-67.

Under § 2252A(a)(5)(B), it is unlawful when a person:

knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or

5

affecting interstate or foreign commerce by any means, including by computer.

18 U.S.C. § 2252A(a)(5)(B).

In this appeal, Walden only challenges whether he knowingly received and knowingly possessed such images, but based on the direct and circumstantial evidence presented at trial, a reasonable trier of fact could have found that he knowingly did both. To begin, an FBI forensic expert discovered over 5,000 saved and deleted suspected child pornography images on four computers that Walden admitted he owned and used. Walden testified that he was "pretty much" the sole user of the computers that were discovered in a home where he alone resided. In addition, Walden admitted to FBI Special Agent Margaret Faulkner that his screen name and e-mail address was "jbgood@alaweb.com," and Special Agent Joseph Ullmann testified that this screen name was associated with three websites that were part of the FBI Site-Key investigation of websites with images of children ranging from age 7 to 17 having sexual intercourse with adults and posed in various positions. Special Agent Faulkner also testified that during the "trap and trace" warrant, she accessed websites and IP addresses associated with Walden's ISP, and the majority of the websites were pornographic, including child pornography.

Contrary to Walden's argument, the evidence did not show that the child pornography images were inadvertently placed on Walden's computers. The FBI expert testified that Walden's internet history showed that he visited various websites containing the terms "lolita" and "preteen," which were common search terms used by people looking for child pornography. The expert also discovered various internet search terms in Walden's unallocated space, including "preteen lolita," "underage vagina," and "prepubescent vagina." Limewire and other peer-to-peer software on Walden's computer contained the search term, "pedo," short for pedophile, and a movie file, titled "12 yr old Puebla Mexicana" was previewed on Walden's computer. Although both the FBI and Walden's forensic experts presented evidence that hackers, viruses, redirections, and pop-ups could inadvertently place child pornographic images on someone's computer, the FBI expert testified that (1) there was no evidence that viruses or hackers caused the child pornography images on Walden's computers, (2) a redirection could not put a video file on a computer, and (3) the pictures in Walden's "My Pictures" folder of his computer, which contained child pornography images, had to be intentionally saved. Walden's expert only examined Walden's computer for two specific days, and she could not account for the other thousands of child pornography images on his computer. The FBI expert further testified that the evidence on Walden's computers showed an active and

7

consistent search for child pornography coupled with numerous child pornography images, which could serve as circumstantial evidence that Walden knowingly received child pornography. See Pruitt, 638 F.3d at 766 (concluding that evidence that a person "sought out" child pornography on the Internet and has a computer with child pornography images can count as circumstantial evidence that a person knowingly received child pornography).

The evidence also showed that four images of naked prepubescent girls were discovered in Walden's bathroom during the execution of a search warrant. Walden admitted to downloading those pictures from a Russian website, but testified that he was "not 100 percent sure" how old the people in the picture were. However, Special Agent Faulkner testified that in one of the pictures, the lack of development in the face and genital area and minimal amount of pubic hair could serve as an indication that the people in the picture were children. There were also images on Walden's digital camera that Walden, his computer expert, and Faulkner all agreed were still images of a paused video containing child pornography. The camera was discovered in Walden's bedroom and Walden admitted that he owned the camera. Therefore, reasonable inference could support the jury's verdict that Walden knowingly possessed child pornography.

Furthermore, Special Agent Faulkner testified that during her interview of Walden, Walden admitted to purchasing and downloading child pornography images in the past. He also said that he believed that it was only illegal to sell child pornography, not to view it. Walden's alleged confusion concerning the legality of viewing versus selling child pornography is not part of the knowledge inquiry. See Bryan, 524 U.S. at 193 (holding that the "knowingly" element did not require proof that a defendant knew his possession of an unregistered machine gun was unlawful).

In addition, where, as here, the defendant takes the stand in a criminal case and exposes his demeanor to the jury, the jury may make adverse determinations about his credibility and reject his explanations as a complete fabrication. Vazquez, 53 F.3d at 1225. Because the jury did not believe Walden's version of the events, as evinced by the guilty verdict in this case, Walden's statements could have been considered by the jury as substantive evidence of his guilt and proof of the requisite knowledge element. Brown, 53 F.3d at 315. Thus, based on all the above evidence, a rational trier of fact could have found that the evidence showed that Walden was guilty beyond a reasonable doubt of knowingly receiving and possessing child pornography.

Next, we find no merit to Walden's argument that the district court erred when it instructed the jurors that "everyone is presumed to know the law" and that

9

"ignorance of the law is not a defense," and when it failed to use our pattern jury instruction on the definition of "knowingly." Generally, district courts are given

> broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts, and we will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process.

Prather, 205 F.3d at 1270 (quotations omitted). "When the jury instructions, taken together, accurately express the law applicable to the case without confusing or prejudicing the jury, there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism." United States v. Beasley, 72 F.3d 1518, 1525 (11th Cir. 1996).

We find no error or abuse of discretion in the district court's jury instructions in this case. For starters, the instruction that "everyone is presumed to know the law, and ignorance of the law is not a defense to the commission of a crime" is a correct statement of law. See Cheek v. United States, 498 U.S. 192, 199 (1991) (noting that "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system"). Furthermore, the jury instructions included the elements of Walden's criminal offenses and defined

10

key terms, including the term "knowingly."[1]  The ignorance-of-the-law instruction, taken together with the rest of the instructions, therefore did not improperly guide the jury or substantially violate Walden's due process rights.  Prather, 205 F.3d at 1270.[2]

Finally, we reject Walden's claim that his convictions for receiving child pornography and possessing child pornography violated the Double Jeopardy Clause

---

[1] In addition, Walden's argument that the district court's jury instruction on "knowingly" was improper because it was not this Court's pattern jury instruction is without merit.  The Eleventh Circuit pattern jury instruction for "knowingly" was the same definition that the district court provided for "knowingly" in the jury instructions.  Pattern Crim. Jury Inst. 11th Cir. BI 9.2 (2010) (defining "knowingly" as "an act [that] was done voluntarily and intentionally and not because of a mistake or by accident").  But in any event, district courts are not required to use this Court's pattern jury instructions, "for they are not precedent and cannot solely foreclose the construction of the necessary elements of a crime as stated in the statute."  Cf. United States v. Dean, 487 F.3d 840, 852 (11th Cir. 2007) (quotations omitted) (holding that district court did not err by using pattern jury instructions in a 26 U.S.C. § 7201 case).

[2] Moreover, United States v. Davis, 583 F.2d 190 (5th Cir. 1978), is not controlling here.  In Davis, the former Fifth Circuit held that, when specific intent is the requisite intent for a conviction, the district court "may not instruct that ignorance of the law is no excuse, because ignorance of the law goes to the heart of the defendant's denial of specific intent."  Id. at 194.  There, the Court was addressing the defendant's conspiracy conviction for exporting a weapon on the Munitions List under 22 U.S.C. § 1934(c), which provided that "any person who willfully violates any provision of this section or rule or regulation issued under this section . . . shall upon conviction be fined not more than $25,000 or imprisoned not more than two years, or both."  Id. at 192-93 (emphasis added).  The Court stated that "specific intent" was required under this statute, while other statutes that did not contain a "willfulness" element may not require specific intent.  Id. at 193 n.2.

Here, Walden's conviction required that he knowingly receive and knowingly possess child pornography.  18 U.S.C. § 2252A(a)(2), (a)(5)(B).  Based on this language, the offenses lack the requirement of a "willful" violation of the law and lack the requirement of specific intent.  See United States v. Duran, 596 F.3d 1283, 1292 (11th Cir. 2010) (holding that since the prohibition in 18 U.S.C. § 951 was "clear on its face" and required the defendants to act "knowingly," then only the mens rea of general intent was required and "ignorance of the law [was] no defense to a criminal prosecution").  Because specific intent is not necessary under 18 U.S.C. § 2252A, Davis does not apply.

of the Fifth Amendment because possession of child pornography is a lesser included offense of receiving child pornography. The Fifth Amendment's Double Jeopardy Clause guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This guarantee prohibits, among other things, multiple punishments for the same offense. United States v. Bobb, 577 F.3d 1366, 1371 (11th Cir. 2009). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). Thus, "where two statutory provisions proscribe the same offense and there is no clear indication that the legislature intended multiple punishments for the offense, the Double Jeopardy Clause's prohibition against multiple punishments protects a defendant from being convicted under both provisions." Bobb, 577 F.3d at 1371-72.

In addressing whether convictions for both receiving child pornography, in violation of § 2252(a)(2)(B), and possessing child pornography, in violation of § 2252A(a)(5)(B), constituted a Double Jeopardy Clause violation, we concluded that "possession is a lesser included offense of receipt" because, "by proving that a person knowingly receives child pornography, the Government necessarily proves that the

12

person knowingly possesses child pornography." Id. at 1373, 1375 (quotations omitted). Moreover, we determined no "clear indication of legislative intent to impose multiplicitous punishment for receipt and possession of child pornography." Id. at 1374 (quotations and brackets omitted). However, in Bobb, we affirmed each of the defendant's convictions because they were "two distinct offenses, occurring on two different dates, and proscribed by two different statutes." Id. at 1375. First, we noted that the defendant's Count 1 receipt offense was charged as occurring on November 12, 2004, while his Count 2 possession offense was charged as occurring on August 2005, demonstrating that the government charged him with offenses occurring at different times. We further noted that the evidence at trial showed that he downloaded images on November 12, 2004, and that he also was found to have possessed 6,000 unlawful images in August 2005, including others beyond those obtained in November, indicating that the government provided sufficient evidence to convict him of the separate offenses. Id.

In this case, because Walden did not raise a double jeopardy argument in district court, we review his argument for plain error, and find none. Unlike in Bobb, Walden's indictment for receipt and possession of child pornography did not charge separate offenses on two distinctly different dates, but the date of the charges in the indictment -- which provided that Walden with receiving child pornography from

13

May 2, 2001, through November 9, 2006, and possessing child pornography on November 9, 2006 -- overlap on November 9, 2006. Research has not revealed controlling law addressing this specific issue and under plain error review, this alone shows that any error is not plain. <u>Chau</u>, 426 F.3d at 1322.[3] Accordingly, we affirm.

**AFFIRMED.**

---

[3] However, even under a preserved error standard of review, Waldon's convictions for receiving child pornography and possessing child pornography were not in violation of the Double Jeopardy Clause because Counts 1 and 2 of his indictment charged different acts that were supported by different evidence. Because Walden's violation of two distinct statutory provisions was supported by separate evidence, and they were not a part of the "same act or transaction" under the <u>Blockburger</u> test, and therefore did not violate the Double Jeopardy Clause.

14