[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-13704

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RASHID TURNER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cr-00080-WFJ-JSS-2

_____

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

Rashid Turner was convicted of bank robbery, Hobbs Act robbery, and the use of firearms in relation to those robberies. Among other things, Turner appeals the denial of his motion to suppress evidence obtained from a warrantless search of his cellphone. We conclude that this evidence was correctly admitted based on the good-faith exception to the exclusionary rule. Because Turner's other arguments also fail, we affirm the conviction and sentence.

## I.    BACKGROUND

In July of 2017, Rashid Turner met Petrie Addison in Fort Myers, Florida, where they commiserated over their financial problems and set off on a months-long robbery spree. On November 18, 2017, they drove to a Wells Fargo bank in a Hyundai rented by a third party. While waiting in the Hyundai for the bank to open, Turner answered a call on his LG cellphone. Turner left his phone in the car while he and Addison robbed the bank.

After robbing the bank, Addison and Turner tried to flee in the rented Hyundai. But Addison had left the car keys inside the bank. When Addison went back inside to retrieve the keys, Turner fled in another vehicle, leaving his LG Phone in the rented Hyundai.

Turner got away, but the police pursued Addison. After a chase, Addison crashed the Hyundai and was apprehended. Addison confessed shortly after he was arrested. The next day, Turner replaced his phone using the same phone number as the LG phone.

The police took possession of the Hyundai, with the LG phone still inside. Upon executing a warrant to search the car, the police seized the locked, password-protected LG phone that was still inside. The phone was put into evidence but was not searched.

Several days after the robbery, Detective Thomas Breedlove prepared an affidavit for a warrant to search the LG phone. His supervisor approved the warrant application, but Detective Breedlove put it back in the case file without presenting it to a judge.

Nonetheless, apparently assuming that a search warrant had been issued, the police extracted data from the phone using a special machine. A few days later, Detective Breedlove realized that he had never obtained a warrant to search the phone. He then brought the affidavit to a state court judge, explaining what had happened. Satisfied with Detective Breedlove's representations, the judge issued the warrant. No one ever claimed ownership of the phone or asked for its return.

A federal grand jury indicted Turner with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Count One); four counts of Hobbs Act robbery, in violation of Section 1951(a) and 18 U.S.C. § 2 (Counts Two, Four, Six, and Nine); two counts of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and

2 (Counts Seven and Ten); and four counts of using, carrying, and brandishing a firearm during and in relation to the robberies, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts Three, Five, Eight, and Eleven).

Turner moved to dismiss some of the robbery counts under the Double Jeopardy Clause, contending that two of the Hobbs Act robbery charges addressed the same conduct as the two bank robbery charges. After conducting a hearing, the district court denied the motion.

Turner also moved to suppress cell-site location information that law enforcement had obtained *via* court order, and evidence obtained from searching the phone. The district court denied both motions. As to the first motion, the district court held that, at the time of the search, our caselaw established that no warrant was required to obtain cell-site information. As to the second motion, the district court held that the officers had acted in good faith and that Turner had abandoned the phone in the rental car.

At trial, Turner objected to the district court's admission of testimony from Special Agent Loretta Bush regarding her use of a software called PenLink to map out Turner's locations using cell-tower data. He argued that Agent Bush lacked credibility because she had no formal training in the software. The district court reserved ruling at that time but noted that the objection had been preserved.

Following a five-day trial, a jury found Turner guilty of all charges except one of the robbery charges and its accompanying firearm charge (Counts Two and Three). Turner later moved to strike the jury's verdicts on the Section 924(c) counts on the ground that they were premised on crimes that qualified as crimes of violence only under Section 924(c)'s unconstitutionally vague residual clause. The district court denied the motion.

Turner was sentenced to concurrent terms of 240 months' imprisonment on the conspiracy, Hobbs Act robbery, and bank robbery convictions, and three consecutive seven-year terms of imprisonment on the Section 924(c) convictions, for a total of 492 months' imprisonment. Turner timely appealed.

## II.    STANDARDS OF REVIEW

"We review a district court's denial of a motion to suppress evidence as a mixed question of law and fact, with rulings of law reviewed *de novo* and findings of fact reviewed for clear error, in the light most favorable to the prevailing party in district court." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007).

We review *de novo* whether the good-faith exception to the exclusionary rule applies to a search, but "'the underlying facts upon which that determination is based are binding on appeal unless clearly erroneous.'" *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) (quoting *United States v. Norton,* 867 F.2d 1354, 1360 (11th Cir. 1989)).

We review the district court's evidentiary rulings for abuse of discretion. *See United States v. Barsoum*, 763 F.3d 1321, 1338 (11th Cir. 2014).

For jury instructions generally, the standard of review "is simultaneously *de novo* and deferential." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).

We generally review claims of double jeopardy *de novo*. *United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009).

## III.    DISCUSSION

Turner makes five arguments on appeal. He argues that the district court erred in denying 1) his motion to suppress the contents of his cellphone; 2) his motion to suppress his cell-site records; 3) his motion to strike the jury's verdicts on the Section 924(c) counts; 4) his motion to dismiss based on double jeopardy; and 5) his motion to strike Agent Bush's testimony at trial. We address each of these arguments in turn.

### A.    *Motion to Suppress Phone Contents*

We turn first to the district court's decision to deny Turner's motion to suppress the contents of his cellphone.[1] Turner contends

---

[1] The government argues that Turner waived his challenge to the district court's order because he "has not identified the specific evidence that the district court supposedly admitted in violation of his Fourth Amendment rights." Although he does not include record cites in his brief, Turner makes clear that he is challenging the search of the contents of his phone, including, the "text

that the government lacked good faith in searching the phone before securing a warrant. He also argues that he did not abandon his phone because it was password protected. Because we disagree with Turner's first argument, we need not address his second.

The Fourth Amendment's warrant requirement contains a good-faith exception, and evidence should not be suppressed where it was obtained by law enforcement who act on a good-faith belief that their conduct does not violate the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 922 (1984).

Turner argues that the good-faith exception does not apply here because the warrant affidavit "inaccurate[ly]" stated that "the LG cellphone was not claimed by Addison." Because the police did not question Addison about the phone, Turner contends that the fact that the phone was not claimed "misle[d]" the judge into believing Addison denied ownership. We disagree. Stating that Addison did not claim ownership of the phone does not imply that he was specifically asked about the phone or that he denied ownership. Nor would Addison's denial have changed the probable cause required to issue the warrant. Regardless of whether Addison was questioned about the phone, the phone was found in the getaway car of a bank robbery.

---

evidence, cell phone calls, cell site pickup, Google Searches, [and] photographs." Accordingly, we conclude that Turner has properly preserved and raised this issue. *See Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1286 n.4 (11th Cir. 2003).

Turner also argues the good-faith exception is inapplicable here because Detective Breedlove "recklessly" asked Sergeant Power to search the phone without a valid warrant. But the district court found that Detective Breedlove "made a mistake and attempted to rectify it." Thus, the court concluded that police acted in "good faith" and "the Fourth Amendment exclusionary rule [did not] require[] any further activity to incent these police officers who know quite well how to conduct themselves." Reviewing this finding for clear error and in the light most favorable to the government, we agree. Upon realizing that he had failed to have the warrant signed by a judge, Detective Breedlove immediately notified Sergeant Power of the mistake. The same day, he explained what happened before a state court judge who then signed the warrant. Thus, we agree that Detective Breedlove acted in good faith rather than "some sort of strategic action." Based on this finding, we affirm the district court's denial of Turner's motion to suppress. *See Leon*, 468 U.S. at 922.

### B.    *Motion to Suppress Cell-Site Data*

Turner argues that the district court erred in denying his motion to suppress his cell-site records. Under the Stored Communications Act, 18 U.S.C. § 2703(d), police can acquire cell-site records from cellular providers if they have "reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." In *Carpenter v. United States*, the Supreme Court held that "[t]he Government's

acquisition of . . . cell-site records was a search within the meaning of the Fourth Amendment," and that "the Government must generally obtain a warrant supported by probable cause before acquiring such records." 138 S. Ct. 2206, 2220-21 (2018). In *United States v. Joyner*, we held that searches of cell-site records obtained under Section 2703(d) trigger the good faith exception to the warrant requirement if they were conducted before *Carpenter* was decided. 899 F.3d 1199, 1204–05 (11th Cir. 2018) (citing *United States v. Leon*, 468 U.S. 897 (1984)).

Here, the Section 2703(d) order for Turner's cell-site records was issued on March 9, 2018, almost three months before *Carpenter* was decided. Turner argues that the government, while not required to be omniscient with regards to future rulings of the Supreme Court, "should have exercised caution and sought a warrant instead of taking any risks especially considering the seriousness of the crimes alleged." Turner cites no authority, persuasive or otherwise, for this proposition. And because *Joyner* squarely forecloses Turner's argument, the district court did not err in denying his motion to suppress the cell-site records.

### C.    *Testimony of Special Agent Bush*

Turner argues that the district court abused its discretion by allowing Special Agent Bush to testify about the cell-site data because she was not an expert in the PenLink software. But Special Agent Bush never used the PenLink software to produce the data. Instead, she took the data to another detective who was

experienced with PenLink to put it in a "user-friendly" format. Thus, the fact that Special Agent Bush lacked specialized training in PenLink would have had no bearing on the admissibility of her testimony. And Special Agent Bush testified that her use of the PenLink data consisted of entering location points into Google Earth. Accordingly, permitting this testimony was not an abuse of discretion.

### D.    Motion to Strike Portions of the Verdict

Turner also argues that the district court erred in denying his motion to strike Counts Five, Eight, and Eleven of the jury's verdict. He asserts that the verdict form for those counts contained the same language as Section 924(c)'s residual clause, which the Supreme Court held to be unconstitutionally vague in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). So, he argues, the jury's guilty verdict on those counts was based on an unconstitutional statute. But Turner concedes that his argument is foreclosed by our decision in *United States v. St. Hubert*, 909 F. 3d 335 (11th Cir. 2018), in which we held that Hobbs Act robbery "independently qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause." *Id.* at 345. Because he raises the issue only "to preserve it in case the Supreme Court overrules [*St. Hubert*]," we decline to address it further.

Turner's motion is also procedurally defective since he explicitly approved of the verdict form. *See United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005) (holding that, by expressly

accepting jury instructions, a party invites any error therein). Thus, he has failed to properly preserve any challenge to it.

### E.    Double Jeopardy

Turner argues that the Second Superseding Indictment violated the Double Jeopardy Clause with regards to Counts Six, Seven, Nine, and Ten. The Indictment twice charged Turner with the same act of robbing the Wells Fargo on November 18, 2017: Count Six charged Turner under the Hobbs Act, 18 U.S.C. § 1951, and Count Seven charged him under the Federal Bank Robbery Act, 18 U.S.C. § 2113. Likewise, the Indictment charged Turner twice with the same act of robbing a Seacoast Bank on December 4, 2017: Count Nine charged Turner under the Hobbs Act and Count Ten charged him under the Bank Robbery Act.

The Fifth Amendment's Double Jeopardy Clause provides that no person may be "twice put in jeopardy" "for the same offence." U.S. Const. amend. V. "'Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense.'" *United States v. Smith*, 532 F.3d 1125, 1128 (11th Cir. 2008) (quoting *Williams v. Singletary*, 78 F.3d 1510, 1512 (11th Cir. 1996)). If the legislative intent is unclear, we apply the same elements test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Id.*

The *Blockburger* test "is one of statutory interpretation in which we examine the elements of each offense to determine

whether Congress intended to authorize cumulative punishments." *United States v. Williams*, 527 F.3d 1235, 1240 (11th Cir. 2008). Under that test, two offenses are different for double jeopardy purposes "if each 'requires proof of an additional fact which the other does not.'" *Smith*, 532 F.3d at 1128 (quoting *Cole v. United States Dep't of Agric.*, 133 F.3d 803, 805 (11th Cir. 1998)). Comparing criminal statutes for purposes of Double Jeopardy "requires a strictly textual comparison." *United States v. Bobb*, 577 F.3d 1366, 1373 (11th Cir. 2009) (citing *Carter v. United States*, 530 U.S. 255, 260-61 (2000)). The key question is whether "a scenario exist[s] where the hypothetical defendant might violate one section without violating the other." *United States v. Hassoun*, 476 F.3d 1181, 1189 (11th Cir. 2007).

Turner's double jeopardy argument rests primarily on legislative intent. He contends that the legislative history of the Bank Robbery Act "clearly imported" that bank robberies should be prosecuted solely under the Bank Robbery Act to the exclusion of the Hobbs Act. But we are limited to a "strictly textual comparison" when comparing criminal statutes for double jeopardy purposes. *Bobb*, 577 F.3d at 1373. Thus, Turner's argument relying on legislative history is unpersuasive.

Looking at the text of the statutes, we conclude that they satisfy *Blockburger* because each requires proof of a fact that the other does not. In pertinent part, the Bank Robbery Act criminalizes the forceful taking of property from "any bank, credit union, or any savings and loan association." 18 U.S.C. § 2113(a). In

contrast, the Hobbs Act provides criminal penalties for anyone who "obstructs, delays, or affects commerce . . . by robbery." 18 U.S.C. 1951(a). Thus, under the Hobbs Act, a robbery or attempted robbery must affect commerce, an element not required for the Bank Robbery Act. On the other hand, the Bank Robbery Act, but not the Hobbs Act, requires that the crime be perpetrated against a "bank, credit union, or any savings and loan association." 18 U.S.C. 2113.

Finally, to the extent Turner argues that the current prosecution is unconstitutional because one act simultaneously violates two different statutes, that argument is meritless. "[D]ouble jeopardy is not implicated simply because a factual situation might exist where a defendant could commit one act that satisfies the elements of two distinct offenses." *Hassoun*, 476 F.3d at 1188-89. Thus, the district court was correct in denying Turner's motion to dismiss on double jeopardy grounds.

## IV.    CONCLUSION

For the foregoing reasons, we conclude that all of Turner's arguments on appeal are without merit. Accordingly, we **AFFIRM**.