[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 6, 2009
THOMAS K. KAHN
CLERK

No. 07-13252

_____

D. C. Docket No. 06-20519-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD CURTIS BOBB,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 6, 2009)

Before TJOFLAT and CARNES, Circuit Judges, and BOWEN,* District Judge.

TJOFLAT, Circuit Judge:

_____

* Honorable Dudley H. Bowen, United States District Judge for the Southern District of Georgia, sitting by designation.

In this appeal, we consider whether convictions for both "receiving" and "possessing" child pornography violate the Double Jeopardy Clause of the Fifth Amendment to the Constitution. Because the indictment charged and the Government proved at trial that Edward Curtis Bobb had committed two distinct offenses, occurring on two different dates, in breach of two different statutes, we find no Double Jeopardy Clause violation and, accordingly, affirm.

## I.

## A.

In September 2004, the Federal Bureau of Investigation ("FBI") opened an investigation to find the person or persons responsible for posting numerous images of child pornography on a website operated by the Great Plains Child Care Resource and Referral Center in Oklahoma (the "Center"). As part of its investigation, the FBI extracted data from the Center's host computers that identified the IP (internet provider) addresses of computers that had recently been used to visit the Center's website.

With this information in hand, the FBI issued subpoenas to numerous Internet Service Providers ("ISPs") to require that they reveal the subscriber information for customers who had visited the Center's website during the time

frame when the images appeared on the site.[1] After acquiring this information, the

FBI identified the account holders who had visited the site and, more importantly,

the account holders who had accessed the specific section of the website

containing the child pornography. Focusing attention on these individuals, the

FBI discovered that, on November 12, 2004, an individual located somewhere in

Miami, Florida, accessed the section of the Center's website containing the child

pornography and had downloaded seven videos and numerous other picture files.

The FBI soon traced the person to Bobb's residence.[2]

On August 10, 2005, FBI agents executed a search warrant at Bobb's

apartment.[3] The agents explained to Bobb that they were looking for images of

child pornography that someone, on November 12, 2004, had downloaded to a

computer traced to his home. Bobb told the agents that he was the only person

living in the residence who used a computer to access the Internet.

---

[1] We assume that the FBI subpoenaed the ISPs under 18 U.S.C. § 2703(c)(2). Under this provision, the government can obtain an administrative subpoena (if authorized by federal and state statute) requiring an electronic communication service provider to disclose the "(A) name; (B) address; (C) local and long distance telephone connection records, or records of session times and durations; (D) length of service (including start date) and types of service utilized; (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (F) means and source of payment for such service (including any credit card or bank account number)" of any customer or subscriber.

[2] It is unclear from the record whether the FBI ever discovered the person or persons responsible for uploading the child pornography onto the Center's website.

[3] Bobb shared the apartment with his son, Xeno.

3

Bobb's apartment consisted of three rooms: a main living room, a kitchen, and a bedroom. While searching the bedroom, the agents discovered two Apple laptop computers: one silver and the other black. In the living room, the agents found a beige desktop computer and two LaCie[4] external hard drives. The agents removed the computers, the hard drives, and miscellaneous paperwork and correspondence related to Bobb.

After seizing Bobb's computer equipment, the agents returned to the FBI office where Special Agent Mary Katherine Koontz inventoried and reviewed the electronic contents in the computers. During this process, Koontz discovered that the silver Apple laptop contained 6,124 images of child pornography. She also discovered seven "zip files"[5]— two of the zip files contained movies of child pornography that had been viewed on the computer. In addition, Koontz found approximately 2,000 images consisting of several images of child pornography "layered on top of one another." That is, instead of one distinct image of child pornography, each image consisted of at least two images of child pornography

---

[4] LaCie is the name of a computer hardware company specializing in external hard drives and other computer components.

[5] A "zip file" is a large computer file that has been compressed to a smaller size so that it can be easily transmitted over the Internet.

merged together to create a single unique image.[6] On the other computers and hard drives, Koontz found another 1,500 images of child pornography.

Koontz submitted fifty of the images found on the silver laptop to Walter Lambert, M.D., a pediatrician at the University of Miami Hospital, and asked that he determine the ages of the children depicted in the images. After examining the images, Dr. Lambert was unable to determine the age of the person in one of the images, but he was able to discern that forty-four images depicted children, mainly girls, under the age of twelve, and that five images depicted children older than twelve, but under the age of eighteen.

B.

Over a year later, on August 24, 2006, a federal grand jury returned an indictment charging Bobb with one count of "receiving" child pornography on November 12, 2004, in violation of 18 U.S.C. § 2252A(a)(2)(B)[7] ("Count I"), and

---

[6] Bobb claimed that he was a "bona fide true artist" and that he was using the overlapping images of child pornography as part of an avant-garde project he entitled "Totem and Taboo." Bobb stated that he wanted to use the work to expose "the ugliness of child pornography."

[7] 18 U.S.C. § 2252A(a)(2)(B) provides that:

Any person who . . . knowingly receives or distributes . . . any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b).

one count of knowingly "possessing" child pornography on August 4, 2005,[8] in violation of 18 U.S.C. § 2252A(a)(5)(B)[9] ("Count II").[10]  Bobb pled not guilty to both counts.

Before trial, Bobb filed a "Motion for Relief from Joinder," arguing that, since "[t]he alleged offenses occurred on two different dates" and because "[t]he same witnesses will be used to prove both counts," there was a substantial risk that the jury would conflate the evidence used to prove Count I with the evidence used

_____

[8] While the indictment charged Bobb with possessing child pornography on August 4, 2005, the evidence at trial established that the FBI conducted a search of Bobb's home on August 10, 2005, and seized the computers containing child pornography on that date.  The evidence, accordingly, was that Bobb possessed the child pornography on August 10, 2005.  Bobb did not object to this variance.  For its part, the district court instructed the jury that "[t]he government does not have to prove with certainty the exact date of the alleged offense.  It is sufficient if the government proves beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged."

[9] 18 U.S.C. § 2252A(a)(5)(B) provides that:

Any person who . . . either knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b).

[10] The Government also added one count of forfeiture under 18 U.S.C. § 2253(a), which, inter alia, requires defendants convicted of child pornography offenses to relinquish all rights to any personal property used, or intended to be used, to commit the offense.  In this case, Bobb was required to surrender to the Government the silver and black Apple laptops and the beige desktop computer.

to prove Count II. Specifically, Bobb pointed out that the evidence the Government planned to use to prove Count I, the "receiving" count, was the seven zip files that Bobb had allegedly downloaded from the Center's website on November 12, 2004, and the rest of the images would be used to prove Count II, the "possessing" count. According to Bobb, he would be unduly prejudiced because the jury would likely consider the images regarding Count II when considering Count I. The district court denied the motion, and the case proceeded to trial.

After a three-day trial, a jury found Bobb guilty on both counts. Bobb's conviction on Count I for "receiving" child pornography carried a minimum mandatory sentence of five years' imprisonment. 18 U.S.C. § 2252A(b)(1). The statutory sentencing range for his conviction on Count II, "possessing" child pornography, was set at zero to ten years' imprisonment. 18 U.S.C. § 2252A(b)(2). Because there were over 6,000 images found on Bobb's computers, the Government asked for a sentence on the "highest end" of the Guidelines sentencing range, which was 168 to 210 months.[11] Over the Government's objection,[12] the district court departed from the prescribed guideline range and

---

[11] Under the sentencing guidelines, a five-level enhancement applies to convictions involving "600 or more images." U.S.S.G. § 2G2.2(b)(7)(D).

[12] The Government did not appeal the sentence.

7

sentenced Bobb to concurrent sentences of ninety-six months' imprisonment and five years' supervised release.[13]

Bobb now argues, for the first time on appeal, that his sentences for both "receiving" and "possessing" child pornography are impermissible because both counts of the indictment charged him with the same offense in violation of the Fifth Amendment's Double Jeopardy Clause.

## II.

While we usually review de novo claims of double jeopardy, United States v. Harvey, 78 F.3d 501, 503 (11th Cir. 1996), we review issues not properly raised before the district court, such as the instant one, for plain error. Fed. R. Crim. P. 52(b); United States v. Evans, 478 F.3d 1332, 1338 (11th Cir. 2007). Under the plain error standard, we will affirm the district court unless: (1) there was an error in the district court proceedings; (2) the error was plain; and (3) the error affected the defendant's substantial rights. Id. If these conditions are met, we may exercise our discretion and vacate the conviction if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v.

---

[13] The district court explained that, in its view, a departure from the sentencing guidelines was warranted because Bobb would have a particularly difficult time in prison, as his sense of identity was inextricably intertwined with his art. And, because there would be very few opportunities to develop his art, prison would be a "very, very, devastating experience" for him. (Appellee's Br. at 24.)

8

Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785,152 L. Ed. 2d 860 (2002); see also United States v. Granville, 716 F.2d 819, 821 (11th Cir. 1983) (per curiam) ("To constitute [plain error], . . . the deficiency must be obvious and substantial, affecting the fairness or integrity of the trial."), aff'd on rehearing, 736 F.2d 1480 (11th Cir. 1984).

## A.

The Fifth Amendment's Double Jeopardy Clause guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This guarantees against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. See Jones v. Thomas, 491 U.S. 376, 380–81, 109 S. Ct. 2522, 2525, 105 L. Ed. 2d 322 (1989); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (1969), overruled on other grounds by, Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). Relevant to this case is the Double Jeopardy Clause's prohibition against multiple punishments for the same offense.

As a general proposition, when a defendant has violated two different criminal statutes, the Double Jeopardy Clause is implicated when both statutes prohibit the same act or transaction or when one act is a lesser included offense of

9

the other.  See Rutledge v. United States, 517 U.S. 292, 297, 116 S. Ct. 1241, 1245, 134 L. Ed. 2d 419 (1996).  Congress, of course, has the power to authorize multiple punishments arising out of a single act or transaction.  See Williams v. Singletary, 78 F.3d 1510, 1512 (11th Cir. 1996).  The constitutional guarantee against double jeopardy merely assures that the court does not "exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); accord Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983) ("[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.").  If it is not clear, though, that the legislature intended multiple punishments for the same conduct, a presumption arises that a conviction under multiple statutes for the same offense is contrary to legislative intent.  See Hunter, 459 U.S. at 366–67, 103 S. Ct. at 678–79; Whalen v. United States, 445 U.S. 684, 691–92, 100 S. Ct. 1432, 1437–1438, 63 L. Ed. 2d 715 (1980).  To sum up, where two statutory provisions proscribe the same offense and there is no clear indication that the legislature intended multiple punishments for the offense, the Double Jeopardy Clause's prohibition against multiple punishments protects a defendant from being convicted under both provisions.

10

The Supreme Court has penned a black-letter rule for use in determining when dual statutory provisions prohibit the same offense: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932). Our analysis focuses on the proof necessary to establish the statutory elements of each offense, not the actual evidence presented at trial. Illinois v. Vitale, 447 U.S. 410, 416, 100 S. Ct. 2260, 2265, 65 L .Ed. 2d 228 (1980); Iannelli v. United States, 420 U.S. 770, 785, n. 17, 95 S. Ct. 1284, 1294 n.17, 43 L. Ed. 2d 616 (1975); United States v. Kimbrew, 406 F.3d 1149, 1151 (9th Cir. 2005).

We pause to acknowledge that, even in cases such as this, where the imposed sentences run concurrently, unlawfully multiplicitous convictions carry serious collateral consequences that cannot be ignored. "For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction." Rutledge, 517 U.S. at 302, 116 S. Ct. at 1248 (quoting Ball v. United

11

States, 470 U.S. 856, 865, 105 S. Ct. 1668, 1673, 84 L. Ed. 2d 740 (1985)). Where we conclude that a defendant has suffered a double jeopardy violation because he was improperly convicted for the same offense under two separate counts, "the only remedy consistent with the congressional intent is for the [d]istrict [c]ourt, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions." Ball, 470 U.S. at 864, 105 S. Ct. at 1673.

B.

Bobb's opening argument is based on a simple proposition: it is impossible to "receive" a thing without, at least at the very instant of "receipt," also "possessing" it.[14] This argument has merit, as courts have recognized that "[g]enerally federal statutes criminalizing the receipt of contraband [generally] require a knowing acceptance or taking of possession of the prohibited item." United States v. Romm, 455 F.3d 990, 1001 (9th Cir. 2006) (internal quotation omitted); see United States v. Ladd, 877 F.2d 1083, 1088 (1st Cir. 1989) (stating that a person must have possession of contraband to show receipt); United States v. Griffin, 705 F.2d 434, 437 (11th Cir. 1983) (per curiam) (finding that receipt, in

---

[14] The Oxford English Dictionary (2d ed. 1989) defines "receive" as "[t]o take in one's hand, or into one's possession (something held out or offered by another); to take delivery of (a thing) from another, either for oneself or for a third party."

the context of a firearms statute, "includes any knowing acceptance or taking of possession"); see also United States v. Strauss, 678 F.2d 886, 894 (11th Cir. 1982) ("We believe that accepting a good and having either physical control of or apparent legal power over a good is sufficient to show that an individual received it.").

Building upon this foundation, Bobb argues that the offenses described in 18 U.S.C. § 2252A(a)(2) (prohibiting receipt) comprise a subset of the offenses described in 18 U.S.C. § 2252A(a)(5)(B) (prohibiting possession), such that possession is a lesser included offense of receipt (possession being the lesser offense as demonstrated by the lower statutory penalty range). The Supreme Court has observed that comparing criminal statutes to determine whether one set of elements is a subset of another requires a strictly textual comparison. Carter v. United States, 530 U.S. 255, 260–61, 120 S. Ct. 2159, 2164, 147 L. Ed. 2d 203 (2000). This requires that we look to the statutory elements, not the way the offenses are charged in the indictment. See United States v. Nash, 115 F.3d 1431, 1437 (9th Cir. 1997).

18 U.S.C. § 2252A(a)(2)(B) authorizes punishment for "[a]ny person who. . . knowingly receives or distributes . . . any material that contains child pornography that has been mailed, or using any means or facility of interstate or

13

foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(5)(B) criminalizes the "knowing[ ] possess[ion] . . . [of] any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."

Accepting the proposition that, if a person takes "receipt" of a thing, they necessarily must "possess" the thing, we find that these provisions, indeed, proscribe the same conduct; by proving that a person "knowingly receives" child pornography, the Government necessarily proves that the person "knowingly possesses" child pornography.[15] See Blockburger, 284 U.S. at 304, 52 S. Ct. at 182 (stating that the test for determining whether there have been multiplicitous convictions for the same offense focuses on the statutory elements of the offenses to determine if each requires proof of a fact that the other does not).

---

[15] We pause to note that the converse is not true: a person can "possess" child pornography without taking "receipt" of it. That is because a person can create the pornography himself.

14

Next, we must consider whether Congress clearly intended to punish a defendant for both "receipt" and "possession" when it enacted the two provisions. See Albernaz v. United States, 450 U.S. 333, 340, 101 S. Ct. 1137, 1143, 67 L. Ed. 2d 275 (1981) ("The Blockburger test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.") "In resolving . . . [a] contention that Congress did not intend to authorize multiple punishment for violations of [two distinct statutes], our starting point must be the language of the statutes. Absent a 'clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" Id. at 336, 101 S. Ct. at 1141 (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S. Ct. 2051, 2056, 64 L. Ed. 2d 766 (1980)). After considering the plain text of the statute and the relevant legislative history, we find no "clear indication of [ ] legislative intent" to impose multiplicitous punishment for "receipt" and "possession" of child pornography. See H.R. Conf. Rep. No. 104-863, at 28–34 (1996) (discussing the Child Pornography Prevention Act of 1996); see also H.R. Conf. Rep. No. 95-811, at 5–7 (1977), as reprinted in 1978 U.S.C.C.A.N. 69, 69–71 (1977) (addressing provisions similar to § 2252A); S. Rep. 95-438, at 1–34 (1977), as reprinted in

15

1978 U.S.C.C.A.N. 40, 40–69 (same).

We acknowledge that this is a question of first impression for this circuit, and, while the text of the statute provides a sufficient basis for our conclusion, we note that our reasoning is consonant with the Supreme Court's decision in Ball v. United States, 470 U.S. 856, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985). In Ball, a felon convicted of receiving a firearm in violation of 18 U.S.C. § 922(h)[16] was also convicted of possessing that firearm in violation of 18 U.S.C. App. § 1202(a).[17] Id. at 857–58, 105 S. Ct. at 1669–70. After applying the same-elements test advanced by Blockburger, the Court concluded that "proof of illegal receipt of a firearm necessarily includes proof of illegal possession of that weapon. When received, a firearm is necessarily possessed. In other words, Congress seems clearly to have recognized that a felon who receives a firearm must also possess it, and thus had no intention of subjecting that person to two convictions for the same criminal act." Ball, 470 U.S. at 862, 105 S. Ct. at 1672 (citation and internal quotation

---

[16] Congress revised much of the text of 18 U.S.C. § 922 after the Supreme Court struck down various provisions of the statute in Printz v. United States, 521 U.S. 898, 117 S. Ct. 2365, 138 L. Ed. 2d 914 (1997) (holding that certain provisions of § 922, which incorporated the Brady Handgun Violence Prevention Act, were unconstitutional, as the Act compelled state officers to execute federal laws), and United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624,131 L. Ed. 2d 626 (1995) (holding that the Gun-Free School Zones Act of 1990, set out in § 922(g), exceeded Congress's Commerce Clause authority).

[17] This provision has since been repealed. Firearm Owners' Protection Act, Pub. L. No. 99-308, § 104(b), (May 19, 1986), 100 Stat. 449, 459.

16

omitted; emphasis in original).

We also find support for our reasoning in the decisions rendered by two of our sister circuits on the very issue we consider today. The Third Circuit, in United States v. Miller, 527 F.3d 54 (3d Cir. 2008), found that Ball was controlling and concluded that "possession of child pornography in violation of § 2252A(a)(5)(B) is a lesser-included offense of receipt of child pornography in violation of § 2252A(a)(2)." Miller, 527 F.3d at 72. Since the defendant had been convicted and sentenced under both provisions for the same conduct in violation of the Double Jeopardy Clause, the court remanded the case to the district court with instructions to vacate one of the underlying convictions. Id. at 74. The Ninth Circuit reached the same conclusion in United States v. Davenport, 519 F.3d 940, 947–48 (9th Cir. 2008), United States v. Giberson, 527 F.3d 882, 891 (9th Cir. 2008), and United States v. Brobst, 558 F.3d 982, 1000 (9th Cir. 2009). See also United States v. Morgan, 435 F.3d 660, 662–63 (6th Cir. 2006) (noting that a defendant charged under § 2252A(a)(2), who pled guilty to violating § 2252A(a)(5)(B), had pled to "a lesser-included offense of the charged violation").[18]

---

[18] We also note that in Miller and Davenport, the courts proceeded under plain error review and found that multiplicitous convictions for both "receipt" and "possession" of child pornography was plain error that threatened "the fairness, integrity, and public reputation of [the] judicial proceedings." Davenport, 519 F.3d at 947–48; see Miller, 527 F.3d at 74 (finding that,

## C.

While we agree with Bobb's opening argument, that "possession" is a lesser included offense of "receipt," his appeal ultimately fails. Unlike the facts in Ball, Miller, Davenport, Giberson, and Brobst, where the defendants were convicted and sentenced under two different statutes for the same offense, Bobb's convictions and sentences were based on two distinct offenses, occurring on two different dates, and proscribed by two different statutes. Count I of the indictment charged Bobb with taking "receipt" of child pornography on November 12, 2004, while Count II charged Bobb with having "possession" of child pornography in August 2005. The evidence at trial proved that Bobb received child pornography on November 12, 2004, by downloading the seven zip files from the Center's website, and, in August 2005, he possessed over 6,000 additional images. Accordingly, the record shows that the indictment charged Bobb with two separate offenses, and the Government introduced evidence sufficient to convict him of those distinct offenses.

## III.

For the reasons stated above, defendant Bobb's convictions are

under the plain error standard, the court could "notice the double jeopardy error" and provide an appropriate remedy).

18

AFFIRMED.