[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14244

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MATTHEW G. MUNKSGARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:22-cr-00017-AW-GRJ-1

_____

Before GRANT, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Matthew Munksgard appeals his conviction and sentence of 18 months' imprisonment for making materially false statements, in violation of 18 U.S.C. § 1001.  On appeal, he argues, for the first time, that his conviction violates the Double Jeopardy Clause because the conduct establishing his § 1001 conviction was also used to revoke his supervised release that resulted from a prior conviction.  He also argues that his 18-month sentence is substantively unreasonable because the court based its upward variance on information outside of the 18 U.S.C. § 3553(a) factors and information already accounted for in the calculation of his guideline range.  After review, we affirm.

I.    **FACTUAL   BACKGROUND   &   PROCEDURAL HISTORY**

In 2015, a federal grand jury indicted Munksgard on four counts of making a false statement on a loan application and one count of aggravated identity theft.  In 2016, a jury convicted Munksgard on all counts.  He was sentenced to a total of 30 months' imprisonment, followed by three years of supervised release, and he was ordered to pay restitution in the amount of $197,995.34.  Munksgard's conditions of supervised release included the requirements that he truthfully answer his probation officer's inquiries and "provide the probation officer any requested financial information, both business and personal."  Munksgard

appealed, and a panel of this Court affirmed his conviction. *United States v. Munksgard*, 913 F.3d 1327 (11th Cir. 2019).

On November 23, 2021, Munksgard's probation officer filed a petition for warrant or summons against Munksgard, alleging that he had violated his conditions of supervised release. The petition alleged that Munksgard had committed nine different violations of his supervised release conditions, including: (1) failing to make required restitution payments; (2) leaving the judicial district without permission on four different occasions; (3) submitting monthly financial reports with inaccurate or missing information; (4) failing to provide the probation officer with requested financial information; and (5) failing to refrain from violating the law by making false statements to the probation officer on two occasions, both in violation of 18 U.S.C. § 1001. The probation officer recommended that the district court issue a summons for Munksgard to appear and show cause as to why his supervised release should not be revoked. As a result, the district court executed a summons against Munksgard.

On August 1, 2022, an information charged Munksgard with one count of making materially false statements, in violation of 18 U.S.C. § 1001. The information alleged that Munksgard submitted a monthly financial report for June 2020, as required by the conditions of his supervised release, that knowingly and willfully omitted his receipt of a check for $24,000.

The next day, the district court held a hearing to address the petition for revocation of Munksgard's supervised release and to

address his change of plea for the § 1001 charge.  The court recited the allegations contained in the probation officer's petition, which Munksgard admitted to committing.  Based on his admissions, the court found Munksgard violated his terms of supervised release.

The district court then moved to the new charge against Munksgard.  Munksgard indicated he was ready to enter a guilty plea for the § 1001 charge, prompting the court to begin a plea colloquy.  However, after discussions with Munksgard, the probation officer and counsel for both parties, the court rejected Munksgard's guilty plea, finding that he did not adequately admit that his false statement was made "knowingly and willfully" as required by § 1001.

Shortly thereafter, the court held a second change of plea hearing.  The court questioned Munksgard on his failure to include his $24,000 income on his monthly report to the probation officer.  After this discussion, the court was satisfied with Munksgard's admission to each of the elements of his § 1001 charge, and it accepted his guilty plea pursuant to a written plea agreement and statement of facts.

The probation officer then prepared Munksgard's presentence investigation report ("PSI"), which set Munkgard's base level offense at six pursuant to U.S.S.G. § 2B1.1(a)(2).  The PSI applied a two-level reduction for acceptance of responsibility pursuant to § 3E1.1(b), yielding a total offense level of four.  The PSI also reported Munksgard's criminal history, which included a 2000 arrest for providing a false odometer reading and his 2015 convictions for

making false statements on loan applications and aggravated identity theft. Because Munksgard committed the instant offense while on supervised release from his 2015 conviction, the PSI added two criminal history points. This resulted in a total of five criminal history points, yielding a criminal history category of III. Based on these findings, the PSI calculated Munksgard's guideline range as zero to six months' imprisonment. The PSI further noted that the § 1001 offense carried a maximum term of five years' imprisonment. Neither party objected to the PSI.

At sentencing, Munksgard presented testimony from Tony Boyette, who employed Munksgard through his commercial survey company called Landguard. Boyette described Munksgard as an integral part of his team at the company. Boyette stated that, in addition to paying Munksgard a regular salary, he provided Munksgard with advance income to assist him with repairing the roof of his house and paying off the restitution amount Munksgard owed in his prior criminal case. Boyette described these payments as advancements on work Munksgard was going to do for Landguard in the future.

The district court then informed Munksgard of his right of allocution, and Munksgard responded by apologizing "for all of us being here." The court then heard arguments as to each party's recommended sentence. The government stated that its argument was intended to address both the revocation sentence and the § 1001 offense, and that Munkgard's behaviors demonstrate a pattern of conduct of dishonesty, fraud, and a willful disregard to his

probation officer's instructions.  The government also argued that a harsher sentence would advance both specific and general deterrence and requested that the court impose an upward variance.

The court responded to the government's argument by noting that Munksgard's violation of his supervised release and his prior offense both contained an aspect of fraud.  The court expressed serious concern about his prior offense and the violation of his supervised release as both being rooted in dishonesty.  The court further stated that Munksgard received a "very lenient . . . below guideline sentence" for his prior offense, yet he continued to engage in the same conduct upon release. The court later noted that its reference to Munksgard's lenient sentence in his prior case was not meant to suggest its belief that the sentence was inappropriate or incorrect, but to explain that most people who received a more lenient sentence would want to put their criminal histories behind them.

Munksgard then presented his mitigation argument, contending that other figures in his life had led him down the road resulting in his prior conviction.  He argued that his prior time in prison impacted his life, and that he did not want to go back and instead believed counseling would be better.  He further argued that a prison sentence in this case would not advance general deterrence and that he did not pose a danger to the community. Munksgard requested that his supervised release be continued with no prison time.

Ultimately, the court sentenced Munksgard to 18 months for the § 1001 violation and 10 months for the supervised release revocation, set to run consecutively for a total of 28 months' imprisonment. The court acknowledged that the sentence was an upward variance for the § 1001 violation, but it noted the supervised release sentence was within guidelines. As to the § 1001 conviction, the court characterized the sequence of Munksgard's conduct as "egregious," and stated that it was not sure that Munksgard fully accepted responsibility or appreciated the gravity of his offense. The court emphasized that Munksgard was given an opportunity to put his fraudulent behaviors behind him upon his release from prison, but then failed to take advantage of that opportunity. The court recognized that Munksgard had paid his restitution, but that it was only paid after he made many efforts to avoid paying it. The court also expressed its belief that, because Munksgard had not expressed sincere regret or remorse for his actions, a severe sentence was necessary to deter Munksgard and others from similar behavior. The court explained its concern that the § 1001 offense followed a conviction and sentence for fraud. The court stated that the guideline range simply did not account for Munksgard's dishonest history and nature. Lastly, the courted explained that an upward variance was justified by a need to protect the public from further frauds by Munksgard.

The district court then explained its sentence for the revocation of Munksgard's supervised release, which it had considered separately from its sentencing decision for the § 1001 violation. Finally, the court stated that it had considered all the § 3553(a) factors

before reiterating its sentence of 28 months' total imprisonment, a $7,500 fine, and three years of supervised release.

After sentencing, the district court filed a Statement of Reasons outlining the basis for Munksgard's § 1001 sentence. The court marked the nature and circumstances of the offense as supporting an upward variance, noting that a downward variance in a conviction for a related fraud offense did not adequately deter Munksgard. The court also wrote that an upward variance was supported by Munksgard's expression of little remorse and his history of dishonesty. The court also marked multiple other § 3553(a) factors as relevant to its decision to impose an upward variance, including deterrence and protection of the public. Munksgard's appeal followed.

## II.    ANALYSIS

### A. *Munksgard's § 1001 Conviction Does Not Violate the Double Jeopardy Clause.*

Although we usually review *de novo* double jeopardy claims, we review double jeopardy claims that are not properly raised in the district court for plain error. *United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009). Under plain-error review, the defendant has the burden to show that the district court committed (1) an error (2) that is plain which (3) that affected his substantial rights. *Id.* If all three elements are met, we may exercise our discretion and reverse "if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* When "the explicit language of a statute or rule does not specifically resolve an issue,

there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Curtin*, 78 F.4th 1299, 1310 (11th Cir. 2023) (internal quotation marks omitted) (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003)).

The Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy clause protects defendants "against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Bobb*, 577 F.3d at 1371. Importantly, when a defendant's supervised release is revoked due to him having subsequently committed another criminal offense, that subsequent offense "does not constitute punishment for that criminal offense for purposes of double jeopardy." *United States v. Woods*, 127 F.3d 990, 992 & n.1 (11th Cir. 1997) (examining a double jeopardy challenge in the context of a revocation of probation while citing cases about revoking supervised release because the two procedures are essentially the same). Instead, revocation of probation constitutes a modification of the terms of the original sentence and implicates solely the punishment initially imposed for the offense conduct underlying that sentence." *Id.*; *see also Johnson v. United States*, 529 U.S. 694, 700 (2000) ("Treating postrevocation sanctions as part of the penalty for the initial offense . . . avoids [Double Jeopardy] difficulties.).

On appeal, Munksgard argues, for the first time, that his § 1001 conviction violates double jeopardy principles. Because he only now raises this argument and did not preserve the argument before the district court, we review the issue for plain error. *Bobb*, 577 F.3d at 1371. Under such review, Munskgard's argument fails because this Court's precedent clearly holds that a revocation sentence does not implicate double jeopardy because such a sentence is derivative of his original sentence. *Woods*, 127 F.3d at 992.

Munksgard attempts to distinguish his case from others by noting that his revocation was based upon specific conditions of his supervised release rather than on a standard "commit no crime" condition. However, Munksgard did not identify any binding precedent recognizing this distinction as relevant for double jeopardy purposes. Because no clear case law or statute supports Munksgard's argument, his claim fails on plain error review. *Curtin*, 78 F.4th at 1310.

### B. Munksgard's Sentence is Not Substantively Unreasonable.

We review for an abuse of discretion the substantive reasonableness of a sentence. *United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020). The party challenging a sentence bears the burden of showing "that the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008). A district court abuses its discretion and imposes a substantively unreasonable sentence when it (1) fails to consider "relevant factors that were due significant weight, (2) gives

significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment" by balancing the proper factors unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (internal quotation marks omitted) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (*en banc*)).

Section 3553(a) mandates that the district court "shall impose a sentence sufficient, but not greater than necessary," to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant;" and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D). In addition, the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" the guideline sentencing range; any applicable policy statements; "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been convicted of similar conduct;" and the need to provide restitution to offense victims. *Id.* § 3553(a)(1), (3)-(7).

Our review of the substantive reasonableness of a sentence involves "examining the totality of the circumstances" and whether the § 3553(a) factors support the sentence. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). We will only vacate a sentence as unreasonable if "we are left with a definite and firm conviction

that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (internal quotation marks omitted) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

District courts have "discretion to decide how much weight to give each § 3553(a) factor." *Williams*, 526 F.3d at 1323. While the district court is required to consider all § 3553(a) factors, it "is permitted to attach 'great weight' to one factor over others." *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)). Moreover, district courts are permitted to consider a wide array of information related to a defendant's background and character in imposing an upward variance. *United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2010). "[T]he district court, in imposing a variance, may consider conduct that a probation officer already had considered in calculating the defendant's advisory guidelines range." *United States v. Moran*, 778 F.3d 942, 983 (11th Cir. 2015). Further, "variances from the advisory guidelines range can sometimes be based on the sentencing judge's disagreement with whether a guideline properly reflects the § 3553(a) factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

A sentence outside of the guideline range is not presumably unreasonable, but we may consider the extent of a variance in our review of the reasonableness of a sentence. *Shaw*, 560 F.3d at 1237. A court selecting a sentence outside the guideline range must have

a justification "sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.  We give weight to a district court's decision to vary because the district court has substantial discretion "in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *Shaw*, 560 F.3d at 1238.  "A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence." *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014).

On appeal, Munksgard argues that his 18-month sentence for his § 1001 conviction is substantively unreasonable because the district court relied on improper factors, such as his history of dishonesty and fraud and his prior below-guidelines sentence, when crafting the sentence.

The district court did not abuse its discretion and imposed a substantively reasonable sentence for Munksgard's § 1001 conviction.  The district court stated that it considered the § 3553(a) factors and found that an upward variance was reasonable in light of Munksgard's history of untruthfulness, the need for both specific and general deterrence, and in the interest of protecting the public.  The court based its decision on the fact that the instant offense of dishonesty followed a prior conviction for fraud and identity theft.  Moreover, the court appropriately considered of facts already accounted for in the calculation of his guideline range.  *Moran*, 778 F.3d at 983.  Finally, the court appropriately crafted the sentence based on its finding that the Guidelines did not adequately reflect the seriousness of Munksgard's conduct and his history of

dishonesty. *Rosales-Bruno*, 789 F.3d at 1254. Thus, the district court clearly considered proper factors in crafting Munksgard's sentence and provided sufficiently compelling support for imposing the upward variance. *Shaw*, 560 F.3d at 1238. Further, the sentence is well below the five-year statutory maximum, which supports the reasonableness of his sentence. *Stanley*, 739 F.3d at 656. Thus, the district court did not clearly err in reaching and imposing its sentence. *Irey*, 612 F.3d at 1190.

## III.    CONCLUSION

For the reasons outlined above, we **AFFIRM**.