**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10296
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JAMES DORELUS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:24-cr-60099-AHS-1

_____

Before BRANCH, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

After a guilty plea, James Dorelus appeals his 120-month sentence, which consists of a 60-month, mandatory-minimum

sentence on his drug distribution conviction in Count 6 and a mandatory, consecutive 60-month sentence on his possession of a firearm conviction in Count 7. In imposing the sentence on the drug crime in Count 6, the district court denied Dorelus safety valve relief—eligibility for a sentence lower than the mandatory minimum—because his firearm possession made him ineligible for such relief under U.S.S.G. § 5C1.2(a)(1)-(5) and 18 U.S.C. § 3553(f)(1)-(5).

On appeal, Dorelus argues the district court's denial of safety valve relief as to his Count 6 sentence punished him twice for the same firearm underlying Count 7 in violation of the Double Jeopardy Clause of the Fifth Amendment. After careful review, we affirm Dorelus's sentence because there is no double jeopardy violation.

## I.  FACTUAL BACKGROUND

The Federal Bureau of Investigations ("FBI") conducted seven controlled-buy operations involving Defendant James Dorelus between September 2023 and May 2024. Six of these controlled buys are the bases for the charges in this case. Each time, the FBI's confidential human source ("CHS") purchased controlled substances from Dorelus. The purchased substances later tested positive for detectable amounts of fentanyl and flourofentanyl.

The first five controlled buys followed a similar pattern. Before each transaction, FBI agents met the CHS and verified the CHS had no money or contraband on their person. FBI Agents then supplied the CHS with FBI investigative funds. Each time, the CHS

met Dorelus either in the vicinity of the VIP Liquors package store or in the Miami Grill restaurant, both located in Fort Lauderdale, Florida. The CHS, always wearing audio and video recording equipment, used the FBI investigative funds to purchase pills or bags containing a brownish or off-white powder in hand-to-hand transactions with Dorelus. Following the purchases, the FBI recovered the purchased contraband from the CHS. Items recovered from each of the first five sales tested positive for: 5.36 grams of fentanyl and fluorofentanyl, 5.8 grams of fentanyl and fluorofentanyl, 25.8 grams of fluorofentanyl, 52 grams of fentanyl and fluorofentanyl, and 57.59 grams of fentanyl and fluorofentanyl.

The sixth and final controlled buy slightly deviated from the pattern set by the first five controlled buys. Before this transaction, the CHS asked Dorelus if he would sell "fire." "Fire" is a shorthand term for firearm. Dorelus responded that $200 would get a "lil small gun," while $300 to $450 would get a "nice one." Eventually, Dorelus sent the CHS a picture of a tan and black pistol and said the cost of the pistol and five ounces of fentanyl would be $11,150.

The CHS and Dorelus met at the Miami Grill, where the CHS gave Dorelus $11,150 of FBI investigative funds in exchange for 100 grams of pills, a 9mm pistol, and two magazines for the pistol. Dorelus exited the restaurant and was taken into custody by FBI Miami Special Weapons and Tactics ("SWAT") members. FBI agents recovered $11,150, 9mm ammunition, and a cell phone from Dorelus. The serial numbers on the recovered cash matched serial numbers of FBI investigative funds provided to the CHS. FBI

agents also recovered the 9mm pistol and drugs from the CHS, and the drugs tested positive for 78.99 grams of fentanyl and fluorofentanyl.

Across the six above transactions between Dorelus and the CHS, and a seventh March 21, 2024 purchase that yielded 12.6 grams of fentanyl, Dorelus was held responsible for 212.34 grams of fentanyl and 25.8 grams of fentanyl analog.[1]

## II. PROCEDURAL HISTORY

### A.    Indictment and Guilty Plea

In May 2024, a grand jury in the Southern District of Florida returned an indictment charging Dorelus with six counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). The first six counts each corresponded to one of the controlled buys and charged Dorelus with possessing varying amounts of fentanyl or fentanyl analogue with the intent to distribute. Count 7 charged that Dorelus "did knowingly carry a firearm during and in relation to a drug trafficking crime . . . ."[2] The indictment also included forfeiture allegations relating to the 9mm

---

[1] Initially, Dorelus objected to being held responsible for fentanyl recovered after the unindicted March 21, 2024 sale. He withdrew that objection at the sentencing hearing.

[2] For purposes of 18 U.S.C. § 924(c)(1)(A), a "drug trafficking crime" is defined, in part, by § 924(c)(2) as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) . . . ." 18 U.S.C. § 924(c)(2).

pistol, ammunition, and other property related to the charged offenses.

In October 2024, pursuant to a plea agreement, Dorelus pled guilty to Count 6 and Count 7 of the indictment. The government dismissed the five other counts of the indictment. The plea agreement stated that the statutory term of imprisonment for Count 6 ranged from a mandatory minimum of five years up to forty years. Similarly, for Count 7, the agreement stated that the district court must impose a mandatory-minimum term of imprisonment of five years consecutive to any other sentence and may impose a maximum term of imprisonment up to life.

At the change of plea hearing, Dorelus's counsel informed the district court that Dorelus and the government agreed that Dorelus could still argue for a safety valve sentence below the mandatory minimum. Dorelus and the government also agreed to a factual proffer statement, wherein Dorelus stipulated that the facts were sufficient to prove the crimes charged under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A).

## B.     Presentence Investigation Report

A probation officer prepared a presentence investigation report ("PSI") using the 2024 Sentencing Guidelines manual. As to Count 6, the PSI calculated a total offense level of 25, consisting of: (1) a base offense level of 28 based on a total of 212.34 grams of fentanyl and 25.8 grams of fentanyl analog, which yielded a converted drug weight of 788.85 kilograms, pursuant to U.S.S.G. § 2D1.1(c)(6); (2) a two-level decrease for acceptance of

responsibility, pursuant to U.S.S.G. § 3E1.1(a); and (3) an additional one-level decrease for Dorelus timely notifying the government of his intent to plea guilty, pursuant to U.S.S.G. § 3E1.1(b). With a total offense level of 25 and a criminal history category of I, the PSI calculated Dorelus's advisory guideline imprisonment range on Count 6 to be 57 to 71 months. However, because this range was below 21 U.S.C. § 841(b)(1)(B)'s mandatory minimum of five years, the PSI adjusted the guideline range to 60 to 71 months. U.S.S.G. § 5G1.2 cmt. n.3.

In calculating the offense level for the 21 U.S.C. § 841(a)(1) drug distribution conviction in Count 6, the PSI explained that it did not apply a two-level increase under U.S.S.G. § 2D1.1(b)(1) for Dorelus having a firearm during that drug crime. Rather, the PSI noted that (1) Dorelus was convicted in Count 7 under 18 U.S.C. § 924(c) for possession of a firearm in furtherance of that § 841(a)(1) drug crime; and (2) Application Note 4 to U.S.S.G. § 2K2.4 provides that, if a § 924(c) firearm sentence is imposed in conjunction with a sentence for the underlying offense (here, the drug crime), the specific offense characteristic for possession of a firearm during that underlying offense is not applied to the sentence for that underlying offense. Because Dorelus was being sentenced in Count 7 for his § 924(c) firearm offense, the PSI thus did not recommend or apply a two-level increase for the firearm in calculating the offense level for his drug crime in Count 6.

The PSI, however, did recommend that Dorelus's firearm possession in connection with his § 841(a)(1) drug distribution

crime meant Dorelus did not meet the requirements of U.S.S.G. § 5C1.2(a)(1)-(5) for safety valve relief, a two-level reduction in his offense level, and a sentence without regard to the statutory mandatory-minimum sentence of five years for his § 841(a)(1) drug crime.

For Dorelus's firearm conviction in Count 7, 18 U.S.C. § 924(c)(1) required, at minimum, a 60-month term of imprisonment to run consecutively to any other term of imprisonment. The PSI applied U.S.S.G. § 2K2.4(b)'s requirement that "the guideline sentence is the minimum term of imprisonment required by statute." Thus, the PSI stated that a 60-month, consecutive sentence was required on Count 7.

Among other objections, Dorelus objected to the PSI's finding that he was not eligible for safety valve relief and thus could not be sentenced without regard to the statutory mandatory minimum for Count 6.[3] Dorelus acknowledged that safety valve relief did not apply to defendants who had "possess[ed] a firearm or other dangerous weapon . . . ." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). Nonetheless, he argued the limitation did not bar him from safety valve relief. First, Dorelus noted the indictment charged him with "carrying" rather than possessing a firearm,

---

[3] Dorelus's other objections related to (1) the PSI's inclusion of information regarding his no contest plea and sentence for a sex-related offense while Dorelus was a juvenile; (2) inclusion of drug quantities from transactions not charged in the indictment; and (3) Dorelus's inability to pay applicable fines. Dorelus does not raise any issues on appeal relating to these objections.

which reflected that the government's CHS initiated the sale of the firearm.

Second, Dorelus argued imposing a sentence on Count 7 and denying safety valve relief on Count 6 based on possession of the same firearm was "clearly double counting and double jeopardy because the Defendant will clearly be punished for the same firearm twice." Dorelus emphasized that the Guidelines did not allow for a firearm to be double counted (1) as the basis for his Count 7 firearm conviction for possession of a firearm; and (2) as an enhancement in his underlying drug sentence. U.S.S.G. § 2K2.4 Note 4. Thus, Dorelus contended a similar double counting should not be used to deny him eligibility for safety valve relief in his Count 6 sentence.

## C.    Sentencing Hearing and Appeal

At Dorelus's January 2025 sentencing hearing, the district court considered what it called Dorelus's "double counting or . . . double-jeopardy-type argument." The district court indicated it did not agree with Dorelus's position. Dorelus's counsel tried to clarify, "it's a guideline argument that I'm trying to make a challenge to here . . . ." Ultimately, the district court overruled the objection and sentenced Dorelus to 60 months imprisonment on his drug distribution conviction in Count 6 and a consecutive 60 months imprisonment on his firearm conviction in Count 7.

Dorelus timely appealed.

## III.  STANDARD OF REVIEW

This Court reviews *de novo* an alleged double jeopardy claim. *United States v. Al Jaberi*, 97 F.4th 1310, 1322 (11th Cir. 2024).

We reject the government's argument that Dorelus failed to raise sufficiently his double jeopardy claim, and we decline to apply plain error review. Both in his objections to the PSI and at the sentencing hearing, Dorelus asserted that the district court finding him ineligible for safety valve relief as to his Count 6 sentence based on the same firearm underlying Count 7 would be "double jeopardy." That Dorelus's counsel referred to the objection as a guideline argument did not negate, but explained the basis for, his double jeopardy claim. Indeed, what Dorelus's counsel adequately conveyed was that denial of safety valve relief under the guidelines improperly placed Dorelus in double jeopardy for the same firearm possession.

## IV.  DISCUSSION

On appeal, Dorelus argues that using his possession of one firearm to both support his firearm conviction on Count 7 and render him ineligible for safety valve relief on Count 6 punishes him twice and thus violates the Double Jeopardy Clause of the Fifth Amendment. We disagree and explicate why.

## A.    Fifth Amendment Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "This

guarantees against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009). Consideration of offender-specific information or prior criminal conduct at sentencing, however, does not result in "punishment" that offends the Double Jeopardy Clause. *Witte v. United States*, 515 U.S. 389, 400-01 (1995); *United States v. Carey*, 943 F.2d 44, 46 n.4 (11th Cir. 1991).

For example, in *Witte*, the defendant's offense level for his marijuana distribution conviction was increased due to quantities of cocaine distributed in contemporaneous transactions. *Witte*, 515 U.S. at 393-94, 399. A subsequent indictment charged him with conspiracy to import that cocaine. *Id.* at 394. The defendant moved to dismiss on double jeopardy grounds because that same cocaine was already used to increase his sentence on his marijuana conviction. *Id.* at 394-95. The Supreme Court found no double jeopardy violation because "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." *Id.* at 401.

Similarly, this Court held in *Carey* that an increase in the defendant's offense level for failure to appear at his sentencing hearing did not constitute a punishment that would cause the Double Jeopardy Clause to bar a subsequent prosecution for willfully failing to appear for sentencing in violation of

18 U.S.C. § 3146. *Carey*, 943 F.2d at 45-47. We noted that enhancement of a sentence based on other criminal conduct had the "practical effect of penalizing the defendant[,]" but "it is not considered 'punishment' for that conduct in the double jeopardy context because the court is sentencing the defendant only for the instant offense, which is considered more serious because of the defendant's other criminal conduct." *Id.* at 46 n.4.

## B.    Safety Valve Relief

Turning to this case, we conclude that consideration of Dorelus's firearm possession to find him ineligible for a sentence reduction—safety valve relief—on his drug distribution conviction in Count 6 did not create a double jeopardy violation. *See Witte*, 515 U.S. at 400-01; *Carey*, 943 F.2d at 46 n.4.

As background, safety valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 "allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met." *United States v. Brehm*, 442 F.3d 1291, 1299 (11th Cir. 2006). A defendant who qualifies for safety valve relief also receives a two-level downward adjustment to his offense level. U.S.S.G. § 2D1.1(b)(18). The defendant bears the burden of satisfying the five requirements for safety valve relief by a preponderance of the evidence. *United States v. Thomas*, 32 F.4th 1073, 1078 (11th Cir. 2022) (citing *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013)).

Safety valve relief is available for charges under 21 U.S.C. § 841(a)(1), including Dorelus's charge for possession of a

controlled substance with intent to distribute in Count 6. 18 U.S.C. § 3553(f). But as the government stresses, one of the five requirements necessary to qualify for that safety valve relief is that "the defendant did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense . . . ." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). Indisputably, Dorelus's firearm possession made him ineligible for safety valve relief on Count 6. So, the only question is whether that ineligibility for safety valve relief is a double jeopardy violation given that Dorelus was also sentenced for his firearm conviction in Count 7. The answer is no.

That Dorelus's sentence was not reduced on Count 6 because of his firearm possession does not punish him for another offense other than the one drug crime in Count 6. Even though the district court sentenced Dorelus for his § 924(c) firearm conviction in Count 7, the district court, as in *Carey*, was free to consider that criminal conduct (e.g., the same firearm possession) in sentencing Dorelus for his drug crime without running afoul the Double Jeopardy Clause. Dorelus attempts to distinguish *Carey* because it did not involve the denial of safety valve relief. Dorelus does not explain the significance of the distinction, and we find none. The upshot of a sentence enhancement or a denial of safety valve relief is really the same for our purposes here: a criminal defendant's sentence or sentencing range is longer than desired. But it does not punish Dorelus twice for the same statutory crime.

In his briefs, Dorelus cites to no authority for his proposition that a court's denial of a sentence reduction under the guidelines amounts to punishment in the double jeopardy context. We recognize that Dorelus does cite to *Brown v. Ohio*, but that case involved the same act or transaction that violated two distinct statutory provisions. *Brown v. Ohio*, 432 U.S. 161, 166, 169 (1977) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). In such circumstances, the Double Jeopardy Clause prohibits multiple punishments "[u]nless each statute requires proof of an additional fact which the other does not . . . ." *Brown*, 432 U.S. at 166 (quotations omitted). Here, Dorelus's firearm possession charge supports a charge that he violated 18 U.S.C. § 924(c)(1)(A), but his firearm possession has not been used to charge Dorelus with violating any other criminal statute. To the extent the district court held Dorelus "violated" the preconditions for safety valve relief, we have already determined consideration of Dorelus's firearm possession for sentencing on his § 841(a)(1) drug conviction was not "punishment" for double jeopardy purposes.

Finally, we note Dorelus's suggestion that he pled guilty to "carrying" a firearm, meaning he did not "possess" a firearm such that he is ineligible for safety valve relief under U.S.S.G. § 5C1.2(a). In the factual proffer statement entered alongside his guilty plea, however, Dorelus concedes the government would have proven that, on May 8, 2024, he "possessed a SCCY CPX-1 9mm pistol . . . ." The district court properly found Dorelus was ineligible for safety valve relief based on his possession of a firearm

and that decision also did not violate the Double Jeopardy Clause of the Fifth Amendment.

## V. CONCLUSION

For the foregoing reasons, we **AFFIRM** Dorelus's 120-month total sentence on Counts 6 and 7.

**AFFIRMED.**